IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 18-cr-118-RM

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

MICHAEL ARTHUR GERBER,

    Defendant.
_____

**REPORTER'S TRANSCRIPT**
CHANGE OF PLEA HEARING
_____

        Proceedings before the HONORABLE RAYMOND MOORE, Judge,

United States District Court for the District of Colorado,

occurring at 11:00 a.m., on the 10th day of October, 2018, in

Courtroom A601, United States Courthouse, Denver, Colorado.

**APPEARANCES**

        DANIEL BURROWS, Assistant U.S. Attorney, 1225 17th

Street, Suite 700, Denver, Colorado, 80202, appearing for the

Government.

        JOHN SULLIVAN, Attorney at Law, John F. Sullivan, III,

P.C., 1745 Shea Center Drive, 4th Floor, Highlands Ranch, CO

80129, appearing for the Defendant.


        TAMMY HOFFSCHILDT, FCRR, CRR, RMR, Official Reporter
            901 19th Street, Denver, Colorado 80294
        Proceedings Reported by Mechanical Stenography
            Transcription Produced via Computer

**P R O C E E D I N G S**

1

2      (In open court at 11:08 a.m.)

3          *THE COURT:*  Please be seated.  18-cr-118, United

4   States versus Michael Arthur Gerber.  Here for Change Of Plea.

5   I will take appearance, please.

6          *MR. BURROWS:*  Good morning, Your Honor.

7   Daniel Burrows on behalf of the government.

8          *THE COURT:*  Good morning to you.

9          *MR. SULLIVAN:*  Good morning.  John Sullivan, on behalf

10  of Mr. Gerber, who is present in custody to my left.

11         *THE COURT:*  Good morning to you and good morning to

12  Mr. Gerber.

13         *THE DEFENDANT:*  Good morning.

14         *THE COURT:*  If you, Mr. Sullivan, and your client,

15  would go to the podium, please.  I suppose I want to ask one

16  question before we get to the actual Change Of Plea, and it's a

17  clarification.  I don't have the document open in front of me,

18  so if I'm off a little bit, you can correct me, and I will

19  acknowledge my error, but the way I understand the Plea

20  Agreement is essentially this, the most that the government

21  will ask for is 18 months, and the government's request will be

22  capped by my guideline calculation.  More accurately, it will

23  be capped by the midpoint of my guideline calculation, if said

24  midpoint is less than 18 months?

25         *MR. BURROWS:*  That's accurate.

1          THE COURT:  All right.  And so the question is, is

2     that before or after application of this one-point adjustment?

3     Because on the one hand, a calculation of a guideline is

4     something that is done without regard to departures or

5     variances.  It speaks to my calculations, but I suspect it's

6     after this, this application of this one-point departure and I

7     just want to be sure that we're all in agreement.

8          MR. BURROWS:  So I believe what the parties

9     contemplated is after departure.

10          THE COURT:  Okay.

11          MR. BURROWS:  So, I mean, obviously, the Court could

12     deny the motion, and if that's the case, then we are stuck with

13     the midpoint of Category I opposed to Category II.

14          THE COURT:  Exactly.  But assuming that I grant the

15     departure, we're talking about the midpoint of the

16     post-departure guideline?

17          MR. BURROWS:  That -- that's correct, Your Honor, and

18     I would also say, if the Court granted other downward

19     departures, under the terms of the guideline, the government

20     would be limited to the middle of that, as well; even ones that

21     are not presently contemplated in --

22          THE COURT:  You use the words applicable guidelines

23     differently than I do.  I guess that's all -- because, to me,

24     the applicable guideline is the guideline before application of

25     any departure or variance, that's the applicable guideline.

1           MR. BURROWS:  I understand that, Your Honor.  The -- I

2     mean, Mr. Sullivan could correct me, but we discussed, in

3     particular, that he may seek a downward departure, and my

4     understanding, as it's written, is that the government will be

5     bound by the midpoint of what the Court decides --

6           THE COURT:  Okay.  And again, I don't have any

7     quarrel, and I am not trying to write the agreement a

8     particular way or be critical of it.  I just want to make sure

9     I understand it.  So the way I'm going forward with this is,

10    18-months max, is what the government will ask for, and beyond

11    that, if I compute the guidelines, including departures,

12    whether they be up or down, so long as the midpoint of the

13    range thus computed, is less than 18 months, then the

14    government will not request a sentence that is greater than

15    that midpoint?

16          MR. BURROWS:  Correct, Your Honor.

17          THE COURT:  You agree, Mr. Sullivan?

18          MR. SULLIVAN:  Judge, I do.  I think the one point

19    was -- the one point -- I'm not speaking for Dan, but it got --

20    got us out of level 13.

21          THE COURT:  So there's a tit for tat, so to speak.  I

22    consider the one point, and in terms of that midpoint, if I go

23    up, but if I go down, it's that post-departure midpoint, as

24    well.

25          MR. SULLIVAN:  Exactly.

1          THE COURT:  As I said, I just want to make sure that I

2     understand it, because I don't know what the guideline is going

3     to be down the road, and we will deal with that as we deal with

4     that.

5          All right.  Mr. Gerber, I needed to clarify that.  We

6     will talk about that a little bit in a moment, but before we

7     can proceed, you have to take an oath to tell the truth.  What

8     I would ask is that you raise your right hand, face my

9     courtroom deputy, she will give you the oath.

10          (Mr. Gerber was sworn.)

11          THE DEFENDANT:  I do.

12          THE COURT:  All right.  You can put your hand down.

13     What you need to understand, sir, is that you are now under

14     oath.  Understood?

15          THE DEFENDANT:  Yes.

16          THE COURT:  What that means is that you have to answer

17     my questions truthfully, today, because, if you were to give a

18     false answer, if you were to lie, what would happen -- could

19     happen, is that the government could take the false answer, and

20     then use it to charge you with additional matters above and

21     beyond anything that you are already looking at.  Understood?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  So, if, at any time today, you don't

24     understand what I'm talking about, and it might be because you

25     didn't hear it, it might be you heard it fine but you are not

1  quite sure what it means, because it's some legal term, and an

2  example of that might be what we're just talking about --

3              *THE DEFENDANT:*  Yes.

4              *THE COURT:*  -- I want to you let me know right away,

5  even if it means you have to interrupt.  Okay?

6              *THE DEFENDANT:*  Yes, sir.

7              *THE COURT:*  What is your full name?

8              *THE DEFENDANT:*  Michael Arthur Gerber, Your Honor.

9              *THE COURT:*  How old are you, sir?

10             *THE DEFENDANT:*  I'm 58 years old.

11             *THE COURT:*  How far did you go in school?

12             *THE DEFENDANT:*  I have had some college.

13             *THE COURT:*  I ask this of everyone.  Can you read?

14             *THE DEFENDANT:*  Yes, Your Honor.

15             *THE COURT:*  Obviously I know the answer to that, based

16  on your education.  At least I hope I know the answer to that,

17  based on your education.  Nonetheless, since the time of your

18  arrest in this case, have you been treated for any form of

19  mental illness or addiction to narcotic drugs?

20             *THE DEFENDANT:*  No, Your Honor.

21             *THE COURT:*  Okay.  Are you currently under the

22  influence of any type of drug, medication or alcoholic beverage

23  of any kind?

24             *THE DEFENDANT:*  No, sir.

25             *THE COURT:*  Are you able to think clearly and make

1  intelligent decisions as you stand here today?

2          THE DEFENDANT:  Yes, I am, Your Honor.

3          THE COURT:  Do you have in front of you a copy of the

4  Indictment that is pending against you?  And I will wait until

5  the answer is yes.

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Okay.  An Indictment is the formal written

8  charge that the government has filed against an individual.

9  With regard to the Indictment, in this case, what I'm asking

10  you is whether or not you have read this document and reviewed

11  it prior to today?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  And have you discussed the Indictment, the

14  case in general, and any possible defenses with Mr. Sullivan,

15  your attorney?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Have you had enough time to talk these

18  matters over with him?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  Are you fully satisfied with the counsel,

21  representation and advice given to you in this case by him?

22          THE DEFENDANT:  Absolutely, Your Honor.

23          THE COURT:  Now, in a moment, I'm going to ask you how

24  you wish to plead to the Indictment, but before I do that,

25  there are two preliminary matters that I have to cover with

1    you.  They are these, first, you have an absolute right to have

2    me read the charge to you, out loud, word-for-word, here in

3    open court this morning, but you also have the right to say

4    that you don't need to have it read to you.  In other words,

5    you waive the reading.  Perhaps because you have a copy in

6    front of you, you know what it says you have read it before or

7    for any other reason.  The choice is yours to make, so I ask

8    you, do you want me to read the charge or not?

9            THE DEFENDANT:  No, that's not necessary, Your Honor.

10           THE COURT:  All right.  The second thing that I tell

11   you is this, the matter today has been set for a Change Of

12   Plea, notwithstanding that, you need to understand that nothing

13   in my setting, nothing that I do, should be taken as any form

14   of suggestion, pressure or influence to get you to plead

15   guilty.  You have an absolute right to enter a plea of not

16   guilty today, if that's what you want to do, and to persist in

17   that plea if that's what you want to do.  Do you understand?

18           THE DEFENDANT:  Yes, Your Honor.

19           THE COURT:  Then with respect to the information that

20   is pending in this matter, I ask you the following questions,

21   first, are you the Michael Arthur Gerber who is named in the

22   Indictment in 18-cr-118?

23           THE DEFENDANT:  Yes, I am, Your Honor.

24           THE COURT:  And with respect to the charge that is

25   there in Count 1, which I will loosely describe as assaulting

1   someone assisting a federal employee, how do you wish to plead

2   guilty or not guilty?

3         *THE DEFENDANT:*  Guilty, Your Honor.

4         *THE COURT:*  Before I can accept the plea there are a

5   number of things I have to go over with you.  They are mostly

6   contained in these documents that I have been given.  I would

7   ask that you look at Court Exhibit 1 and Court Exhibit 2.  And

8   briefly, turn to the last page of each document, and after you

9   have examined the documents and the signatures, tell me whether

10  or not you signed both documents?

11        *THE DEFENDANT:*  Yes, Your Honor, I did.

12        *THE COURT:*  Mr. Sullivan, did you sign both?

13        *MR. SULLIVAN:*  Yes, sir.

14        *THE COURT:*  And, Mr. Burrows, did you sign the Plea

15  Agreement?

16        *MR. BURROWS:*  I did sign the Plea Agreement, and I am

17  looking at it right now, and that is my signature.

18        *THE COURT:*  All right.  Mr. Gerber, did you read these

19  documents over before you signed them?

20        *THE DEFENDANT:*  Yes, Your Honor.

21        *THE COURT:*  Did you have the opportunity to not only

22  read them yourself, but to review them and discuss them with

23  Mr. Sullivan?

24        *THE DEFENDANT:*  Yes, I have, Your Honor.

25        *THE COURT:*  And, in fact, did you take that

1    opportunity?  In other words, did you, in fact, talk to him

2    about it?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Okay.  You feel you understand what they

5    say?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Did you sign the documents freely and

8    voluntarily?

9          THE DEFENDANT:  I did, Your Honor.

10          THE COURT:  Do they contain every single agreement

11   that you have with the government, in terms of resolving this

12   case?

13          THE DEFENDANT:  Yes, they do, Your Honor.

14          THE COURT:  Has anyone made any promise to you that's

15   not in these documents, in order to get you to plead guilty?

16          THE DEFENDANT:  No, sir.

17          THE COURT:  Has anyone, whether it be the government,

18   your lawyer or anyone else threatened you, coerced you or

19   pressured you, in any way, in order to get you to plead?

20          THE DEFENDANT:  No, Your Honor.

21          THE COURT:  I want to go over the Plea Agreement with

22   you.  I begin the portion of that document that talks about

23   your agreement or deal with the government, and I want to make

24   sure that we have the same understanding.

25          What I understand is going on, is the following, you

|     |                                                                            |
|-----|----------------------------------------------------------------------------|
| 1   | have agreed to plead guilty to Count 1 of the Indictment.  You              |
| 2   | have also agreed that you will not oppose a government motion                |
| 3   | for a one-point increase in your criminal history score under               |
| 4   | the sentencing guidelines, and then thirdly, you've agreed that             |
| 5   | you would waive any appellate rights that you might have.                    |
| 6   | Understood?                                                                  |
| 7   | THE DEFENDANT:  This is my understanding, Your Honor.                       |
| 8   | THE COURT:  Now, let me talk about this appellate                          |
| 9   | waiver, so that you -- so that we're on the same page on that.              |
| 10  | Normally, when an individual is convicted, he or she has the                |
| 11  | right to appeal certain matters in connection with the                      |
| 12  | prosecution, conviction or sentence to a higher court, in this              |
| 13  | case, the Tenth Circuit Court of Appeals.  What's been agreed               |
| 14  | to in this case is that you waive; that is, give up any right               |
| 15  | to appeal any matter in connection with the prosecution,                    |
| 16  | conviction or sentence, unless one of three things happens.                 |
| 17  | The three things that would permit you to appeal are                       |
| 18  | these, first, if I gave you a sentence that was greater than                |
| 19  | that called for in the statute of conviction, then you can                  |
| 20  | appeal.  Second, if I gave you a sentence that was greater than             |
| 21  | that called for, for you, at a line on the guideline chart                  |
| 22  | known as Offense Level 13, then you could appeal, and then                  |
| 23  | thirdly, you could appeal if the government appeals.                         |
| 24  | Understood?                                                                  |
| 25  | THE DEFENDANT:  Yes, Your Honor.                                            |

1          *THE COURT:*  But unless one of those three things

2     happens, you waive; that is, give up any right to appeal any

3     matter in connection with the prosecution, conviction or

4     sentence.  Understood?

5          I'm going to pause for a moment and ask another

6     clarifying question.  Mr. Burrows and Mr. Sullivan, just as

7     before, my question was, is this before or after the

8     application of the one point, is it the intention of the

9     parties that the appellate waiver is at offense level 13,

10    wherever that falls on the chart, before or after I apply the

11    one level.  Assuming I --

12         *MR. BURROWS:*  As I'm sure the Court is aware, this is

13    standard language in our office, and I have noticed this

14    ambiguity before, because it does not incorporate a particular

15    criminal history.

16         *THE COURT:*  Break from the pack.

17         *MR. BURROWS:*  I believe --

18         *THE COURT:*  Disregard the standard.

19         *MR. BURROWS:*  In this case, the parties' intend that

20    it would be Level 13, Category II.

21         *THE COURT:*  Okay.  In other words post the --

22         *MR. BURROWS:*  Exactly, yes.

23         *THE COURT:*  -- the departure?  Do you agree?

24         *MR. SULLIVAN:*  Absolutely.

25         *THE COURT:*  All right.  And do you understand what I'm

1  saying, sir?

2        THE DEFENDANT:  Yes, Your Honor.

3        THE COURT:  Do you agree, that's most important?

4        THE DEFENDANT:  Yes.

5        THE COURT:  Okay.  Finally, as a separate part of this

6  appeal waiver, there's something else that you waive or give

7  up.  Not only do you waive or give up the right to go to the

8  Court of Appeals, but you waive or give up any right to come

9  back here, to me, after sentencing, to seek any form of relief

10  in connection with the prosecution, conviction or sentence,

11  unless one of three things happens.

12        The three things that would permit you to come back

13  here are the following, if, after you're sentenced, there's

14  some change in the sentencing guidelines or the sentencing

15  statute that reduces your exposure, and that change has been

16  made applicable to you, even though you have already been

17  sentenced, then you can come back and ask for the benefit of

18  that reduction.  You could also come back here after sentencing

19  if you were deprived effective assistance of counsel or were

20  prejudiced by prosecutorial misconduct.  Understood?

21        THE DEFENDANT:  Yes, Your Honor.

22        THE COURT:  All right.  That's what my understanding

23  is, in terms of all of the things that you've agreed to do.

24  The government has also agreed to do certain things.  The

25  government has agreed that, at sentencing, it will move to

1    dismiss the remaining counts of the Indictment, which is

2    Count 2, currently, loosely described, as cyberstalking.  The

3    government also agrees that it will not, under the guidelines,

4    seek a particular enhancement, that enhancement is for official

5    victim, and finally, the government agrees that it will make a

6    particular sentencing recommendation to me.  What that

7    recommendation is, sometimes depends upon what the guidelines

8    are.  So let me just kind of walk through it, because this is

9    the matter I was clearing up with counsel at the outset.

10          Worst-case scenario, no matter how I compute the

11   guidelines, the government will not ask for more than 18

12   months.  If I compute the guidelines, and take into account any

13   departure, up or down, and after I do that, you look at that

14   guideline and the midpoint or the middle of that guideline is

15   less than 18 months, then, in that circumstance the government

16   will not ask for more than the midpoint of that guideline

17   range.

18          So, in rough terms, the government is not going to ask

19   me for more than 18 months.  And there are certain

20   circumstances that are dependent upon my guideline

21   calculations, where the maximum they will ask for is less than

22   that.  Understood?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  All right.  That, I believe, constitutes

25   the entire agreement between yourself and the government.  Do

1    you agree with me?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  You agree, Mr. Sullivan?

4          MR. SULLIVAN:  Yes, sir.

5          THE COURT:  Do you agree, Mr. Burrows?

6          MR. BURROWS:  Yes, Your Honor.

7          THE COURT:  All right.  Now, what's important for you

8    to understand is that nothing in this agreement binds me.

9    Obviously, I didn't sign it.  You know that.  But when I say

10   nothing binds me, what it means is I'm not part of the deal.

11   So just hypothetically, the parties could ask for a particular

12   sentence, for example Mr. Burrows could, consistent with this

13   agreement recommend 18 months or 16 months, depending on how

14   the guidelines are calculated.  I don't have to go along with

15   that and sentence you to that, simply because, it was provided

16   for in your agreement.

17          I am not bound at sentencing by anything in the

18   agreement, it is the parties who are bound, and I am free to

19   make my own decisions applying the applicable law,

20   notwithstanding what is set forth in the -- in the Plea

21   Agreement.  Understood?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  I need to tell you about the maximums,

24   because the law requires that I do so.  In this case, the

25   maximum possible penalty is not more than 8-years imprisonment,

1  not more than $250,000 fine or both.  Not more than three years

2  supervised release, a $100 assessment and restitution, if any.

3  Do you understand?

4         *THE DEFENDANT:*  Yes, Your Honor.

5         *THE COURT:*  In that list of words that I just used,

6  there's one that's not a normal word, and that is, supervised

7  release.  I want to describe it to you.  At sentencing, I

8  could, in fact, send you to prison for a term of months.  If I

9  were to to do that, I can also also decide that when you get

10  out, you would be on supervised release for a term not to

11  exceed three years, and if you were placed on supervised

12  release, it would mean that your conduct on the street would be

13  governed to certain terms and conditions that would be part of

14  that supervised release and that would be imposed at the time

15  of sentencing.  Things like, and I am just speaking

16  hypothetically, get a job, don't commit another crime, attend

17  mental-health counseling, things of that nature.

18         If you were to violate any term and condition of

19  supervision, you could be brought back to court, accused of

20  violating, and if I found you to have violated the terms and

21  conditions, I could send you back to prison, even though you

22  served the entire sentence I originally gave you.  Understood?

23         *THE DEFENDANT:*  Yes, Your Honor.

24         *THE COURT:*  You understand that you are pleading

25  guilty to a felony?

1          *THE DEFENDANT:*  Yes, Your Honor.

2          *THE COURT:*  What that means is that there's ... well,

3     one of the things that happens, regardless of whether it's a

4     misdemeanor or a felony, is this, there's no parole in the

5     federal system.  What that means is that you have to serve all

6     of the time that I give you, regardless of whether or not --

7     well, with the exception of a certain limited number of days

8     per year that the bureau of prisons could credit you with for

9     good-time behavior.  Understood?

10         *THE DEFENDANT:*  Yes, Your Honor.

11         *THE COURT:*  I could also sentence you to do any

12    sentence that I give you in this case, together with or to

13    follow, the legal terms being concurrently or consecutively,

14    with any other sentence that you may be subject to.  I'm not

15    saying there's such a sentence, but if there is the sentence I

16    give you, it could be made to run together with it or follow

17    it.  Understood?

18         *THE DEFENDANT:*  Yes, sir.

19         *THE COURT:*  And finally, there are things that happen

20    to you, beyond anything that I do.  Pleading guilty to a felony

21    affects your right to vote, sit on a jury, possess firearms,

22    hold certain jobs in the public or private sector.  It may also

23    affect your eligibility for government programs or subsidized

24    housing.  Understood?

25         *THE DEFENDANT:*  Yes, Your Honor.

1            THE COURT:  Would you take the Plea Agreement and turn

2   to page four.  There you will see a Roman numeral five, and a

3   section called Stipulation Of Facts, that continues over to

4   about halfway through page six.  Do you see that?

5            THE DEFENDANT:  Yes, Your Honor.

6            THE COURT:  Did you review that section prior to

7   today?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  Did you do so with Mr. Sullivan?

10           THE DEFENDANT:  Yes, sir.

11           THE COURT:  You know what it says?

12           THE DEFENDANT:  Yes, sir.

13           THE COURT:  Now, I wasn't there, and what this section

14  is trying to do is, simply, to tell me what happened, and so I

15  ask you, is it true?  In other words, is what it says happened,

16  in fact, what happened?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  There's also a section of the document

19  that talks about the guidelines, and I want to cover them in

20  broad terms.  You've heard me reference them up to now at

21  various points in time.

22           In every criminal case there's a group called the

23  Sentencing Commission and they make a suggestion to the Judge

24  as to what sentence to impose in every criminal case.  They

25  don't do it in any way that anyone would consider normal.  What

1    I mean by that is there's not going to be anybody from the

2    Commission who shows up at sentencing and says, "Here's our

3    recommendation."  They are not going to send a letter.  They're

4    not going to even make a phone call.  The way it works is this,

5    they produce this manual, called the Guideline Manual, and if

6    you apply the rules of that book, what will be spit out, if you

7    would, is that recommendation.

8         The rules of the book are essentially as follows, you

9    get a score, depending upon your criminal record, if any, what

10   you were convicted of, how long ago, what sentence you got,

11   these are things that contribute to that score.  The crime gets

12   a score, based on the presence or absence of certain facts.

13   Was there physical injury, things of that nature that are

14   described in -- in the Guideline Manual.  Once I know your

15   score and the crime score, I simply go to a chart, and go down

16   the column to the appropriate line for the crime score, and

17   where that point of intersection is, there's a set of numbers.

18   That set of numbers is the recommendation of the Sentencing

19   Commission.  Understood?

20        THE DEFENDANT:  Yes, Your Honor.

21        THE COURT:  Now, with respect to the Plea Agreement,

22   your lawyer and the government's attorney have calculated what

23   they think is the way the guidelines should be calculated.

24   Understood?

25        THE DEFENDANT:  Yes, sir.

1    THE COURT:  But that's their calculation, not mine,

2    and it is not official and it is an estimate.  Understood?

3    THE DEFENDANT:  I understand, Your Honor.

4    THE COURT:  What it means is that at sentencing, I

5    could compute the guidelines differently.  Maybe higher, maybe

6    lower than they have computed them.  Do you understand?

7    THE DEFENDANT:  Yes, Your Honor.

8    THE COURT:  Regardless of whether I agree or disagree

9    with how the guidelines are computed in this document, the

10   important point for you to remember is this, the law requires

11   that I calculate the guideline correctly, but it does not

12   require that I follow the guidelines.  I must consider them,

13   but I'm not obligated to follow them.  Understood?

14   THE DEFENDANT:  Yes, Your Honor.

15   THE COURT:  So what it means for you is this, if, for

16   any reason, I choose to sentence you differently than for what

17   the Plea Agreement calls for or the guidelines calculate or

18   project as the appropriate sentence, you are not going to be

19   allowed to withdraw your plea of guilty on that basis.  Do you

20   understand?

21   THE DEFENDANT:  Yes, sir.

22   THE COURT:  I switch over to the Statement By The

23   Defendant In Advance Of Plea, and I am going to focus on a

24   particular topic therein; that is, the right to go to trial.

25   You do not have to plead guilty.  There is another

1    choice, that choice is going to trial.  Understood?

2            THE DEFENDANT:  Yes, Your Honor.

3            THE COURT:  Choosing to plead guilty though, means

4    that you give up the right to go to trial.  Do you understand?

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  So before I can accept the plea of guilty,

7    I need to make sure that you understand what the other option

8    is, what you would be giving up, and so I intend to review it

9    with you.

10           You have the right, not only, to trial, but to go to

11   trial before a jury of 12.  Do you understand?

12           THE DEFENDANT:  Yes, sir.

13           THE COURT:  If you did that, the jury would be the

14   ones who would decide whether you were guilty or not guilty.

15   Do you understand?

16           THE DEFENDANT:  Yes, sir.

17           THE COURT:  They would base their decision only on the

18   evidence that was presented during the course of the trial.  Do

19   you understand?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  They could not find you to be guilty.

22   Unless each and and every one of the 12 agreed that the

23   evidence showed you to be guilty beyond a reasonable doubt.  Do

24   you understand?

25           THE DEFENDANT:  Yes, sir.

1          THE COURT:  Do you understand that at this trial you

2     are not required to prove that you are not guilty?  You are not

3     required to prove or disprove anything.  The government is

4     required to prove guilt beyond a reasonable doubt and if the

5     government doesn't do that, then the jury must find you to be

6     not guilty.  Do you understand?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Now, I want you to go back to Exhibit 1,

9     for just a moment, and turn to page three.  Speaking of the

10    Plea Agreement, there's a section called Elements Of The

11    Offense.  Do you see that?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  I call that to your attention for a sole

14    and singular reason, and it is -- it is this, if you were to go

15    to trial, each of these things are matters which the government

16    would have to prove beyond a reasonable doubt before you can be

17    found guilty.  Do you understand?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  I want you to look for just a moment at

20    element number one, that you assaulted, resisted, opposed,

21    impeded, intimidated or interfered with a person described in

22    the Indictment.  With regard to that, I will tell you further

23    that the Tenth Circuit has determined that the offense must

24    involve or rise to the level of an assault before you can be

25    convicted.  Do you understand?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Okay.  At trial you would have the right

3     to the assistance of counsel.  Do you understand?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Meaning, you're here and Mr. Sullivan is

6     here with you throughout the entirety of the trial.  Do you

7     understand?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Witnesses testify and evidence is

10    presented in front of you, here in open court, so that you can

11    see and hear the case against you.  Understood?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Mr. Sullivan could Cross-examine any

14    witness who offers testimony against you, and he can challenge

15    any physical exhibit that is offered into evidence, as well.

16    Understood?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  And if you wanted to, through

19    Mr. Sullivan, you could present witnesses and evidence at this

20    trial, as well.  Understood?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  In other words, it's a bit of a two-way

23    street.  Both sides, each side, gets the opportunity to tell

24    its side of the story on the issue of guilt or non-guilt

25    through the evidence.  Understood?

1          *THE DEFENDANT:*  Yes, Your Honor.

2          *THE COURT:*  In terms of your side, if you are unable

3     to pay for the costs of a defense, attorney fees, expert fees,

4     any other type of fee, cost or expense, all of that gets paid

5     for you by the government.  Do you understand?

6          *THE DEFENDANT:*  Yes, sir.

7          *THE COURT:*  But remember what I told you earlier, the

8     burden is on the government to prove guilt beyond a reasonable

9     doubt.  That burden stays on the government, regardless of

10    whether or not you choose to put on a defense.  As I put it

11    earlier, tell your side.  Understood?

12         *THE DEFENDANT:*  Yes, sir.

13         *THE COURT:*  At trial, you have a special right that is

14    unlike any other witness.  No one can make you testify at

15    trial.  You and only you get to decide whether you will

16    testify.  If you want to, you can, and no one can stop you, and

17    if you don't want to, no one can make you either, and the

18    government can't even call you to the witness stand in front of

19    the jury.  Do you understand?

20         *THE DEFENDANT:*  Yes, Your Honor.

21         *THE COURT:*  You don't have to decide today whether you

22    would testify at a trial.  You don't have to decide until,

23    frankly, the middle of the trial, after the government has

24    finished putting on all of the evidence, and you know what the

25    case against you looked like, that's the earliest point in time

1    at which you would have to decide whether or not you wanted to

2    testify.  Understood?

3            THE DEFENDANT:  Yes, Your Honor.

4            THE COURT:  If you were to decide that you did not

5    want to testify, I will tell the jury that they can't consider

6    that fact in any way.  They cannot even think about it on the

7    issue of guilt or draw any inference, at all, from the fact

8    that you elected not to testify.  Understood?

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  If you go to trial and you are convicted,

11   you would have the right to appeal the conviction, as well as

12   any sentence imposed on you, by me, following that conviction.

13   Understood?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  That right to appeal would not, in any

16   way, be limited or restricted in the manner that it is in your

17   Plea Agreement.  Understood?

18           THE DEFENDANT:  Yes, Your Honor.

19           THE COURT:  Again, if you cannot afford an appeal, an

20   attorney would be appointed for you, at no cost to you, and any

21   and all costs associated with the appeal would be paid for you

22   by the government.  Do you understand?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  If you plead guilty, this trial does not

25   happen, and there is no trial because by pleading guilty you

1    waive; that is, give up the right to go to trial, as well as

2    all of the rights that go along with a trial.  Understood?

3              *THE DEFENDANT:*  Understood.

4              *THE COURT:*  And there's no right to appeal the issue

5    of guilt, at all, when one pleads guilty, because you admit

6    your guilt by pleading guilty.  Do you understand?

7              *THE DEFENDANT:*  Yes, sir.

8              *THE COURT:*  Sir, is there anything, at all, about a

9    trial that you do not understand or want to ask me about?

10             *THE DEFENDANT:*  No, I understand it.

11             *THE COURT:*  Mr. Gerber, in a very simple way, choosing

12   to go to trial is turning to the government and saying about

13   the charges that have been filed, "Hey, prove it, beyond a

14   reasonable doubt."  And pleading guilty is turning to the

15   government and saying something very different, it's saying,

16   "You don't have to prove it, because I admit it."  Understood?

17             *THE DEFENDANT:*  Yes, Your Honor.

18             *THE COURT:*  Sir, we're now at the end of this hearing.

19   I have reviewed with you what I think I need to.  Have you

20   understood all of the things that we've talked about here

21   today?

22             *THE DEFENDANT:*  I have, Your Honor.

23             *THE COURT:*  Is there anything, at all, that you want

24   to ask me about or that you are uncertain in your

25   understanding?

1            THE DEFENDANT:  No, Your Honor.

2            THE COURT:  Anything that you want to speak to

3     Mr. Sullivan about before we finish?

4            THE DEFENDANT:  No, Your Honor.

5            THE COURT:  Then we are at the end of this hearing.

6     This will be the last chance you will have to change your mind.

7     Mr. Gerber, I ask you one final time, do you still want to

8     plead guilty?

9            THE DEFENDANT:  Yes, Your Honor.

10           THE COURT:  Are you pleading guilty of your own free

11    will?

12           THE DEFENDANT:  Yes, I am.

13           THE COURT:  Are you, in fact, guilty?

14           THE DEFENDANT:  Yes, I am.

15           THE COURT:  Mr. Sullivan, do you know of any reason I

16    should not permit Mr. Gerber to plead?

17           MR. SULLIVAN:  No, sir.

18           THE COURT:  Mr. Burrows, do you?

19           MR. BURROWS:  No, Your Honor.

20           THE COURT:  Executed plea documents are admitted for

21    purposes of this hearing.  Based on those documents, my

22    observations of the defendant, the statements of counsel and

23    the record developed here today, it is the finding of the

24    Court, in the case of the United States versus

25    Michael Arthur Gerber, that the defendant is fully competent

1   and capable of entering an informed plea; that he is aware of

2   the nature of the charge and the consequences of the plea; that

3   he has had the benefit of competent counsel; and that the plea

4   of guilty is a knowing and voluntary one, which is, in fact,

5   supported by an independent basis, in fact, which contains each

6   of the essential elements of the offense.  The plea is

7   therefore accepted, and the defendant is now adjudged guilty of

8   Count 1.

9           I defer acceptance of the Plea Agreement until the

10  sentencing hearing.  Any and all pending motions, if there are

11  any in this case, are denied as moot.

12          Sentencing is set for January 3, at 9:30.

13          Mr. Gerber, between now and the sentencing date,

14  someone from the probation department is going to come out and

15  talk to you, and I can assure you that it will be sooner,

16  rather than later.  What they do is they independently review

17  the facts and report them to me.  They independently calculate

18  the guidelines, and tell me what they think they are, and they

19  also tell me about you.  They are only going to learn about

20  you -- or they are largely going to learn about you through

21  this interview process.  So I encourage you to cooperate with

22  them so they get it right.

23          When they're finished -- well, at the interview,

24  Mr. Sullivan can be there, with you, and when they're done with

25  the interview, and they finished a draft of the report, you

1   will see the draft before it is finalized, and you will have an

2   opportunity to suggest changes, corrections or additions.

3   Regardless of whether or not you have any such changes or

4   corrections or additions at sentencing, both you and

5   Mr. Sullivan, as well as Mr. Burrows, will have an opportunity

6   to speak directly to me.  Do you understand?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  In connection with the report, I order

9   that any information, release, data or material provided to the

10  probation department by the defendant shall be used by the

11  probation department only for the preparation of the record and

12  for no other purpose, without further order or authorization of

13  the Court.

14          The defendant is in custody.  He is remanded to

15  custody pending sentencing.

16          Anything further on behalf of the government?

17          MR. BURROWS:  Your Honor, I -- I can't remember what

18  your practice is, but I know some Judges order probation not to

19  do an independent investigation of the facts.  Is that your

20  intent in this case?

21          THE COURT:  No.  It used to be what I did.

22          MR. BURROWS:  That's what I thought.

23          THE COURT:  For awhile, and that's probably why you

24  are remembering and the -- and I gave it up.

25          MR. BURROWS:  Okay.

1    THE COURT:  And the reason I gave it up, was that it

2    was simply too tempting for both sides, and it became my

3    impression that, and I mean no disrespect to anyone in your

4    office or anyone in the defense bar, but it came to be my

5    impression that rather than accurately projecting or

6    calculating the guideline range and disagreeing where they

7    needed to disagree, what was happening was the facts were being

8    molded to try a particular guideline calculation, which, of

9    course, left me in the position of saying to myself, "How do I

10   fulfill this duty that the Supreme Court says I have to

11   accurately slate the guidelines, when I'm not being given the

12   accurate facts?"

13         I'm not suggesting anything like that is going on

14   here.  I'm not suggesting it with respect to any particular

15   person in the past.  It just came to be simply more difficult

16   than it was helpful and so I abandoned the practice.

17         MR. BURROWS:  That's understandable.  Actually, in

18   this case, Your Honor, if that was still your practice, I was

19   going to ask that we not do it in this particular case.  In the

20   past I have had problems getting probation to add additional

21   information when that was the order, and so that -- in this

22   case there's additional information.

23         THE COURT:  No.  They do a -- an independent

24   investigation in all of my cases.

25         MR. BURROWS:  Okay.  Fantastic.

1          *THE COURT:*  Well, you don't know that.

2          *MR. BURROWS:*  That's true.  That alleviates --

3          *THE COURT:*  Your reaction --

4          *MR. BURROWS:*  That alleviates the concerns that I

5     would otherwise have.

6          *THE COURT:*  All right.  Anything from the defendant?

7          *MR. SULLIVAN:*  No, sir.  Thank you.

8          *THE COURT:*  All right.  We will be in recess.

9          *THE COURTROOM DEPUTY:*  All rise.  Court is in recess.

10         (Recess at 11:42 a.m.)

11                         REPORTER'S CERTIFICATE

12

13         I certify that the foregoing is a correct transcript from
      the record of proceedings in the above-entitled matter.

14

15         Dated at Denver, Colorado, this 21st day of March, 2019.

16                              s/Tammy Hoffschildt

17         _____

18                              Tammy Hoffschildt, FCRR,RMR,CRR

19

20

21

22

23

24

25